David N. Chandler, Sr.   SBN 60780
David N. Chandler, Jr.   SBN 235427
DAVID N. CHANDLER, p.c.
1747 Fourth Street
Santa Rosa, CA  95404
Telephone: (707) 528-4331

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE:                           CASE No. 09-13736

                                 CHAPTER 11
JUDY INOK KIM,
                                 EX PARTE APPLICATION TO APPROVE
                                 BROKER'S LISTING PURSUANT TO
      Debtor.           /        11 U.S.C. SECTION 327; AFFIDAVIT
                                 OF PROPOSED BROKER

    David N. Chandler, Jr., Attorney for Debtor, makes ex-parte application for an Order approving retention of Cushman and Wakefield of California, Inc., pursuant to 11 U.S.C. Section 327 on a standard listing agreement and represents as follows:

    1.  That the real property located at 299 Campus Court, Fairfield, California (hereinafter the "Real Property"), is an asset of the within Chapter 11 estate.

    2.  That the Real Property is an improved commercial parcel.

    3.  Debtor estimates that the Real Property has a fair market value of $1,500,000.00.  Debtor is the owner of an undivided 50% interest in the Real Property.

    4.  It is in the best interests of the estate, secured creditors and unsecured creditors to lease the Real Property at its fair rental value or to sell the Real Property at its fair market value.

    5.  Debtor entered into a standard listing agreement with Cushman and Wakefield of California, Inc., a copy of which is

attached to the Affidavit as Exhibit "A".

6. Insofar as counsel and Debtor have been able to ascertain, the proposed broker has no interests adverse to those of the trustee, the debtors, their creditors or any other party in interest, or their respective attorneys or accountants, the United States Trustee or any person employed in the office of the United States Trustee, and represents no interest adverse to the estate in the matters upon which it is to be retained. Based thereon, the proposed broker is a disinterested person within the meaning of Sections 101 (14) and 327 of the Bankruptcy Code.

WHEREFORE, Debtor prays for an Order of this Court approving the listing agreement and qualifying the real estate broker pursuant to 11 U.S.C. Section 327, and for such other and further relief as the Court deems just and proper.

Dated: 1/7/10  DAVID N. CHANDLER, p.c.

By: */s/ David N. Chandler, Jr.*
DAVID N. CHANDLER, JR.
Attorney for Debtor

AFFIDAVIT OF PROPOSED BROKER IN SUPPORT
OF APPLICATION TO APPROVE BROKER'S LISTING

Joseph J. Cook, II, Broker, being duly sworn, deposes and says:

1. I am a Broker with Cushman and Wakefield of California, Inc., which maintains an office located at 1000 Fourth Street, Suite 350, San Rafael, California 94901.

2. Insofar as I have been able to ascertain, my office does

not have any connection with the Debtor herein, their creditors, or any other party in interest or their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee, and represents no interest which is adverse to our representation of the Debtors herein.

   3.   Insofar as I have been able to ascertain, my office does not represent any interest adverse to that of the estate of the Debtor in the matters upon which it is to be engaged. It has never represented and has had no prior contact with the Debtor herein, and it has no connections with any creditors insofar as known and represents no interests and has no interests adverse to the estate.

   4.   Based on the foregoing, My office is a disinterested person within the meaning of Section 101(14) and 327 of the Bankruptcy Code.

   5.   Affiant advised Debtor of my office's willingness to serve as real estate broker on the terms and conditions set forth in the listing agreement, Exhibit "A".

Dated:   1/7/10                    /s/ Joseph J. Cook, II
                                   Joseph J. Cook, II, Broker

## EXCLUSIVE LISTING AGREEMENT

Judy Kim, Jonathan & Mary Chang ("Owner") hereby appoints Cushman & Wakefield of California, Inc. ("Broker") as its sole agent and grants to Broker the exclusive right to lease the real properties (collectively the "Properties" and individually a "Property.").

1. **PROPERTIES:** The Properties are located at 299 Campus Court in Fairfield, County of Solano, State of California, and are further described as either an office/it. industrial building that consists of approximately 16,811 square feet situated on approximately 1.74 acres and constructed in 1988.

2. **AGENTS:** Broker has assigned as agents for the Property - Chris Neeb.

3. **TERM:** The term of this Agreement commences on November 1st, 2009 and ends at the close of business on _May 1st_, 2010 unless extended in writing by both parties. The term may be earlier terminated by either party by the deliverance of written notice to the other party three (3) days prior to such termination.

4. **BROKER'S SERVICES:** Broker shall seek to secure satisfactory tenants for the Properties, and Broker shall also solicit the cooperation of other licensed real estate agents and brokers. Broker will negotiate the terms of any sale or lease on behalf of Owner and in Owner's interest.

5. **OWNER REFERRALS:** Owner shall conduct a marketing outreach intended to generate candidates for the lease of Properties. Owner will refer to Broker all inquiries and offerings received by Owner regarding the Properties, and negotiations will be conducted by Broker or under Broker's direction subject to Owner's review and final approval.

6. **ADVERTISING:** Owner authorizes Broker to advertise the Properties in periodicals and to place signage on the Properties at Brokers expense provided that Owner shall first approve of all such advertising and signage. Broker will provide at its expense its standard signage, brochures, advertising programs and e-mail outreach. Any additional advertising and promotion will be done at Owner's expense pursuant to a program and budget determined by Owner and will identify Broker as lease agent for the Properties.

7. **COMMISSION:** If, during the term hereof, Owner sells or leases any of the Properties, except as is limited by Section 6, above, Owner will pay to Broker a commission in accordance with the attached Commission Schedule.

8. **COMMISSIONS AFTER AGREEMENT TERM:** Within 15 days following the end of the term, Broker will provide to Owner a "Prospect List," which shall be a detailed list of prospective purchasers and/or tenants (a) with whom the Broker directly discussed the Properties AND (b) to whom Broker or Owner delivered printed information about the Properties during the term of this Agreement. The names of prospective purchasers and/or tenants will not be placed on the Prospect List unless the requirements of both (a) and (b) in the foregoing sentence have been satisfied. If a prospective purchaser or tenant appearing on the Prospect List enters into a purchase contract, lease or option to lease or purchase within 120 days following the end of the term, and the purchase thereafter closes or the lease is executed, Owner will pay a commission to Broker as provided on the Commission Schedule. Owner agrees that such 120-day period will be extended for so long as negotiations with a prospective purchaser or tenant are continuing.

9. **THIRD-PARTY BROKERS:** Broker agrees to cooperate with other licensed real estate brokers and agents in its effort to locate purchasers for the Properties. If a broker or agent other than the agents identified in Section 2 represents a purchaser or tenant in a transaction for which a commission would be payable hereunder, Broker will negotiate with such third-party broker to reach an agreement regarding the sharing of the commission payable hereunder. Broker shall notify Owner of the shares of the commission that are due to Broker and the third-party broker in connection with each individual sale or lease transaction, and Owner will pay to Broker and the third-party broker the agreed upon amounts at the close of escrow or execution of the lease, as may be applicable. Broker and Owner agree that no lease or sale agreement

EXHIBIT "_A_"

Case: 09-13736    Doc# 35    Filed: 01/07/10    Entered: 01/07/10 14:56:24    Page 4 of 6

involving a purchaser or tenant that is represented by a third-party broker shall be executed unless and until such a commission sharing agreement is reached between Broker and the third-party broker.

10. **PROPERTY INFORMATION**: Complete information regarding the Properties including, without limitation, its environmental condition, natural hazard disclosures, property owners association operational documents, architectural design, pricing, standard features, optional modifications, parking plan and other details have been provided to Broker and are generally available on the Properties' web site. Owner will provide a "Buyer Kit" containing much of this information to Broker for delivery to prospective purchasers and tenants, and Broker will inform prospective purchasers and tenants of the availability of additional information on the Properties' web site. Owner agrees to provide to Broker with any such additional information about the Properties requested by Broker and available to Owner. Broker agrees not to provide to prospective purchasers and tenants any printed information prepared by Broker relating specifically to the Properties without Owner's advance review and approval of such information.

11. **LEASE AGREEMENTS**: In the conduct of its business hereunder, Broker shall use only lease documents that have been prepared by Owner and shall deliver them to Owner for review, approval and execution after prospective tenants have executed them.

12. **FEES AND EXPENSES**: If Owner or Broker commences legal action to enforce its rights under this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs incurred in such litigation. Any portion of a commission not paid to Broker when due will bear interest from the due date until paid at the highest legal rate of interest.

13. **AUTHORITY**: Owner represents that it is the owner of the Properties and has the full right, power and authority to execute this Agreement, to consummate sales or lease transactions as contemplated herein and to perform Owner's obligations hereunder.

14. **SURVIVAL**: This Agreement is binding upon the parties hereto and their respective successors and assigns. The terms "Owner" and "Broker" shall include their affiliates, successors, assigns and nominees.

15. **COUNTERPARTS**: This Agreement may be executed in counterparts, and those counterparts shall be considered one and the same Agreement.

16. **ENTIRE AGREEMENT**: This Agreement constitutes the entire agreement between Owner and Broker and supersedes all prior discussions, correspondence or agreements of any kind. No modification of this Agreement will be effective unless it is made in writing and executed by both Owner and Broker.

**OWNER:**

Judy Kim

By: _____

Its: Owner

Date: 4/1/2009

**BROKER:**

By: _____

Its: Executive Vice President

Date: 1/7/2010

COMMISSION SCHEDULE

2

1. **Commissions – Leases:**

    a. In the case of a Property in which a lease is negotiated by Broker without the participation of a third-party cooperating broker, the commission payable to Broker shall be based upon the following schedule. On the below table, "Year" is the year of the lease term, with the maximum commissionable term being 10 years, and "Commission Percentage" is the percent of the tenant's annual lease payment to be paid to Broker. The total commission payable to Broker in connection with the lease of Properties shall be equal to the lease payment amounts specified in the lease multiplied by the below Commission Percentages throughout the lease term. Years 1-5 shall equal 3% of the total aggregate rent, Years 6-10 C&W shall not receive any commissions.

    b. In the case of a Property in which a tenant is introduced to Broker or Owner by a third-party agent or broker, the total commission payable collectively to Broker and the participating third-party broker shall be equal to the amounts described below....

The total commission payable to C&W over the lease term shall equal 1.5%, Years 1-10. The 3rd party Broker shall be paid 3% of the total aggregate rent from Years 1-5 and 1.5% of the total aggregate rent from Years 6-10.

    c. Commissions are based upon the net lease payments made by a tenant to Owner excluding the cost of any NNN payments paid by the tenant.

    d. Broker shall be paid its commission based upon the entire lease term notwithstanding Owner's right to cancel the lease in the event of a tenant default.

2. **Time of Payment – Leases:** The commission payable in connection with the lease of Properties shall be paid in full at the time of that tenants commence occupancy of the individual Properties.

3. **Lease-To-Own Program:** In the event that Owner enters into a contract with a party that begins with a lease and later results in a purchase, Broker will be entitled to payment of both a leasing commission AND a purchase commission. The leasing commission shall be based upon the schedule described in Section 1 above. At the time that the tenant becomes an owner and closes escrow on the purchase of the subject Property, the commission is 5% and shall be payable to Broker, provided, however, that the sale commission shall be reduced by the amount of lease commission that was earlier paid to Broker.

4. **Sale of Leased Properties:** In the event of a sale or other disposition of a Property that has been leased pursuant the above described Lease-To-Own Program, but which Property has not yet been purchased by the tenant, Owner shall remain responsible for payment to Broker of the commission that will be due to Broker at the time that the tenant completes it purchase.

Approved:

Owner's initials: _JC_   Broker's initials: _[signature]_